**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

REUBEN LOPEZ AVERY,

Plaintiff,

v.

DARCI J. BENTZ, *Chief Judge*; KAYLA MCKENNEY, *Court Administrator*; STEVEN R. SCHWAB, *Retired Senior Judge*; SHERRY E. HALEY, *Judge*; TERI JOANNE AVERY; JAMES MAURICE CHRISTON; ALL RELATED STATE ACTORS; and JOHN/JANE DOES 1–20,

Defendants.

Case No. 26-cv-2932 (LMP/EMB)

**ORDER DISMISSING COMPLAINT**

Plaintiff Reuben Lopez Avery filed the operative amended complaint on July 16, 2026, raising many claims against Minnesota state-court judges who have presided over various state-court proceedings in which he has been involved over the last several years. ECF No. 7. Avery also filed two motions for temporary restraining orders ("TRO"). ECF Nos. 3, 11. Avery seeks to proceed *in forma pauperis* ("IFP"), ECF No. 2, so his complaint is subject to pre-service review and may be dismissed under 28 U.S.C. § 1915(e)(2). For the reasons below, the Court dismisses this action and denies Avery's IFP application and TRO motions as moot.

## BACKGROUND

Understanding the procedural history of both this case and the underlying state-court proceedings on which Avery's claims are based is necessary to understand and

contextualize the allegations Avery makes in his amended complaint. Therefore, the Court first reviews the relevant background from Avery's state-court proceedings, and then the proceedings before this Court, before turning to the allegations and claims raised in the amended complaint.

## I. State-Court Proceedings

Avery's allegations arise from two matters in Jackson County District Court: (1) *State v. Avery*, No. 32-CR-24-152 (Minn. Dist. Ct.) ("Criminal Case"), a criminal case; and (2) *In re Marriage of Avery*, No. 32-FA-24-41 (Minn. Dist. Ct.) ("Dissolution Case"), a marital-dissolution matter. The dockets from those cases, including the orders that Avery filed as exhibits, ECF Nos. 11-1, 11-2, supply the procedural facts recounted below.[1]

The criminal case arose from Avery's arrest on November 30, 2024, after which Avery was charged with second-degree assault. *See* Criminal Case, Index #1 at 1. Judge Darci J. Bentz held a remote bail hearing on December 2, 2024.[2] Criminal Case, Index #6.

---

[1] The Court may take judicial notice of public judicial records. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005). And when considering whether to dismiss a complaint for failure to state a claim, the Court may consider "matters incorporated by reference or integral to the claim[s], items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted). Accordingly, for purposes of reviewing Avery's amended complaint under 28 U.S.C. § 1915(e)(2)(B), the Court will consider the exhibits that Avery has filed in this matter and relevant documents from his state-court proceedings. *See id.* Further, to the extent those documents "contradict[] allegations in the complaint," the documents "trump[] the allegations." *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 996 (D. Minn. 2013) (citation omitted), *aff'd*, 823 F.3d 462 (8th Cir. 2016).

[2] As discussed more below, the amended complaint alleges that no hearing occurred and that the associated paperwork was fabricated. *See* ECF No. 7 at 2.

Avery, through counsel, filed a notice to remove Judge Bentz on December 5, 2024. *See* Criminal Case, Index #11. Judge Bentz granted the notice, stating that the "request for removal is granted based on . . . timely filing of Notice of Removal." Criminal Case, Index #16 at 1 ("Removal Order"); ECF No. 11-1 at 1. The same day, state-court administration issued a Notice of Judicial Reassignment assigning the Criminal Case—and only that case—to Judge Michael D. Trushenski. Criminal Case, Index #17 at 1 ("Reassignment Order"); ECF No. 11-1 at 11.

Avery, represented by counsel, petitioned to enter a guilty plea. Criminal Case, Index #21. On January 24, 2025, Judge Trushenski sentenced Avery to 15 months in prison —stayed for two years—and two years of supervised probation running through January 24, 2027. Criminal Case, Index #33 at 1–2. Avery later filed pro se petitions for postconviction relief on May 28, 2026, claiming that "all judicial actions occurring after December 10, 2024, are void ab initio due to a lack of lawful judicial authority." Criminal Case, Index #84 at 1; *see also* Criminal Case, Index #86. Because Avery is "now represented by the public defender" in those proceedings, his pro se petitions effectively have been denied. *See* Criminal Case, Index #95.

Judge Bentz has presided over the Dissolution Case, which began on August 16, 2024, and was pending at the time of Avery's arrest. *See* Register of Action, Dissolution Case. On December 11, 2024—the day after Judge Bentz's removal in Avery's criminal case—Avery filed a notice to remove Judge Bentz in the Dissolution Case. Dissolution Case, Index #47. Judge Bentz denied that motion as untimely. Dissolution Case, Index #50. The case proceeded through 2025 and into 2026, during which Judge Steven

R. Schwab and Judge Sherry E. Haley also served as judicial officers in the case. *See generally* Register of Action, Dissolution Case.

On May 3, 2026, Avery moved to disqualify Judge Bentz from the Dissolution Case for actual bias. *See* Dissolution Case, Index #504; ECF No. 11-1 at 2–3. After a hearing, Judge Bentz denied the motion, making findings on each asserted ground, including Avery's request for a disability accommodation. ECF No. 11-1 at 2–3. Four days later, Judge Bentz set a hearing for August 11, 2026, to consider whether Avery should be deemed a frivolous litigant "[b]ased on his numerous and repeated filings" of "voluminous documents that are of a frivolous nature . . . , as well as correspondence directed at judicial branch staff that contain inappropriate[,] offensive, harassing, and/or unprofessional commentary of a derogatory nature." Dissolution Case, Index #509 at 1. Judge Bentz's order directed court administrators to compile a report of Avery's communications with court staff and to prepare to testify at the hearing. *See id.* at 2. The hearing appears to have been held as scheduled, and the Dissolution Case remains pending as of this Order.

## II. Commencement of Federal Action

Avery filed the original complaint here on June 11, 2026. See ECF No. 1. His original complaint named as defendants the State of Minnesota, three Minnesota state district court judges (Judge Bentz, Judge Troy G. Timmerman, and Judge Trushenski), and unspecified "other state administrative liability defendants." *Id.* at 1. The original complaint sought only "declaratory and prospective injunctive relief" on the theory that Judge Bentz had recused from Avery's "Jackson County criminal matter" on December 10, 2024; that "[n]o lawful assignment order" subsequently issued from the Chief Justice of

the Minnesota Supreme Court; and that, as a result, "all judicial actions" taken after that date were "without jurisdiction" and therefore "null and void." *Id.* (emphasis omitted). Avery simultaneously filed his first TRO motion asking this Court to prohibit Judge Bentz, Judge Timmerman, and Judge Trushenski from "enforcing any judicial orders, warrants, rulings, or proceedings issued after December 10, 2024 in [Avery's] Jackson County cases" and to declare any action taken by those judges in those cases "null and void." ECF No. 3.

Avery filed the operative amended complaint on July 16, 2026, before any defendant was served and any responsive pleading was filed. ECF No. 7. Accordingly, the amended complaint supersedes the original complaint and is the operative pleading for this action. *See* Fed. R. Civ. P. 15(a)(1); *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). The amended complaint removes the State of Minnesota, Judge Timmerman, and Judge Trushenski as defendants, but keeps Judge Bentz and adds Judge Schwab, Judge Haley, Kayla McKenney (identified as a court administrator), Teri Joanne Avery (Avery's ex-wife), James Maurice Christon, and 20 "John/Jane Does."[3] ECF No. 7 at 1. The next day, Avery filed an amended TRO motion, which seeks the same relief as and supersedes the original TRO motion (which the Court therefore denies as moot). ECF No. 11.

This is Avery's second action in this District arising from his state-court proceedings. In November 2025, he sued most of these same defendants for "judicial retaliation, procedural sabotage, disability-based discrimination, and unlawful

[3] Judge Bentz, Judge Schwab, Judge Haley, and McKenney are collectively referred to in this Order as the "Judicial Defendants."

concealment of his children." *Avery v. Minnesota*, No. 25-cv-4216 (PJS/SGE), ECF No. 1 at 1 (D. Minn. Nov. 4, 2025). Then-Chief Judge Patrick J. Schiltz dismissed that action without prejudice, holding that: (1) Avery's claims could not proceed under the *Younger* abstention doctrine[4] because the relief he requested would require federal judicial interference in the Dissolution Case; (2) Avery's claims for damages arising from the Criminal Case were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) under *Preiser v. Rodriguez*, 411 U.S. 475 (1973), Avery's attack on his state criminal conviction should be brought through a petition for a writ of habeas corpus, not a civil-rights action. *Avery v. Minnesota*, No. 25-cv-4216 (PJS/SGE), ECF No. 18 at 4–7 (D. Minn. Jan. 9, 2026).

The amended complaint here renews those theories, adds new defendants and allegations relating to events that occurred in and after late 2025, and again asks the Court to displace the handling of Avery's state court proceedings.

## III. Allegations in the Amended Complaint

Avery purports to bring twelve causes of action.

Count I alleges that Defendants denied Avery "due process" and "equal protection" in the Dissolution Case. *See* ECF No. 7 at 8. Avery claims he was denied "meaningful participation" because: (1) Judge Bentz characterized a petition Avery filed as an "ex parte motion" at a January 2025 hearing; (2) ex parte communications allegedly occurred between January and March 2025, followed by orders "contradicting the transcript record";

---

4 *Younger v. Harris*, 401 U.S. 37 (1971).

(3) the court allegedly disregarded the best-interests factors that must be considered for purposes of determining child custody under Minnesota law; (4) Avery's testimony was muted during a November 2025 hearing; and (5) the state court refused to provide disability accommodations and again muted his testimony at a June 2026 hearing. *See id.* at 3–6.

Count II alleges "fraud on the court," claiming that Defendants "falsified hearing records and judicial documents." *Id.* at 8. The key records and documents at issue appear to concern a bail hearing in the Criminal Case. *See id.* at 2.

Count III alleges "judicial misconduct and unauthorized exercise of judicial power." *Id.* at 9. This claim rests on three points: (1) Judge Bentz continued to oversee the Dissolution Case after she recused in the Criminal Case (Avery contends that she recused from *all* of his proceedings); (2) Judge Schwab presided without a valid assignment and after his retired-judge authority allegedly expired; and (3) Judge Haley issued determinations outside her authority, which Avery believes renders those orders void. *See id.* at 2, 4–5.

Count IV alleges that Defendants "refused to exercise mandatory emergency jurisdiction despite active danger," thereby violating Minnesota's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Id.* at 9. The "active danger" Avery alleges is his children's continued exposure to James Maurice Christon, described as a "Tier II predatory offender" who has allegedly endangered Avery's children in various ways. *See id.* at 7–8.

Count V alleges that Defendants "obstructed" Avery's rights under the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention")

and "misapplied international custody law." *Id.* at 9. As the Court understands it, this claim rests on Avery's allegation that, during his 58-day detention awaiting trial in the Criminal Case, he filed "a fully executed Hague Convention petition for physical custody." *Id.* at 3. This is the petition referenced in Count I, which Avery alleges Judge Bentz mischaracterized as an "ex parte motion" and then took numerous actions allegedly violating the International Child Abduction Remedies Act ("ICARA"), the federal statute implementing the Hague Convention in the United States. *Id.* at 3–4; *see* Pub. L. No. 100-300, 102 Stat. 437 (1988) (codified as amended at 22 U.S.C. §§ 9001–11). Count V apparently reaches Teri Avery and Christon as well. Avery claims that Teri Avery "obstructed Hague Convention rights and ICARA procedures" and that Christon's continued involvement with the children constitutes "an ongoing grave-risk pattern obstructing [Avery's] Hague Convention rights." ECF No. 7 at 7–8.

Count VI alleges wrongful retention, kidnapping, and concealment of Avery's children by Teri Avery and Christon, invoking Minn. Stat. § 609.26 and 18 U.S.C. § 1201. *Id.* at 6, 9. Avery alleges that in May 2024, Teri Avery "abducted [Avery's] children" and "filed a false criminal report to conceal the abduction," and that in June 2024, she "used outdated . . . [order for protection] accusations to mislead the court and conceal the children's location." *Id.* at 6–7. Avery also claims this "retention" continued with Judge Bentz's approval, alleging that Judge Bentz impermissibly authorized Teri Avery's relocation to Iowa in March 2025, "then ignored" an "unauthorized relocation back to Minnesota" in June 2025. *Id.* at 4.

Count VII alleges that Defendants "obstructed filings and denied [Avery] access to a lawful tribunal" in violation of Avery's "constitutional rights" and "Minnesota's access-to-justice principles." *Id.* at 9. The reference to "obstructed filings" rests on Judge Bentz's alleged mishandling of Avery's Hague Convention petition and her conduct at later hearings: muting Avery's testimony, allegedly fabricating appearance records, and denying Avery's November 2025 petition for an order for protection. *Id.* at 3, 5–6. The "lawful tribunal" component appears to reflect Avery's claims that: (1) Judge Schwab presided over an October 2025 custody hearing "without any assignment order and after his judicial authority expired June 30, 2025"; (2) Judge Haley later "acted as an unlawful gatekeeper, denying jurisdictional objections and issuing determinations outside her authority"; (3) McKenney admitted in November 2025 that "no documentation exists" for the judicial reassignments that had occurred; and (4) a Minnesota Judicial Branch directory was "retroactively altered in July 2026 to fabricate Schwab's authority." *Id.* at 4–5. Avery further alleges that Judge Bentz, despite her December 2024 recusal in the Criminal Case, has scheduled additional proceedings for August 2026 in the Dissolution Case. *Id.* at 2, 6.

Count VIII alleges that "[c]ourt administration" violated "Minnesota's standards for judicial integrity" by engaging in a "coordinated administrative cover-up." *Id.* at 10. This claim rests on two main court-administration allegations discussed in Count VII. The first is Avery's allegation that McKenney admitted in November 2025 that "no documentation exists" for the judicial reassignment in Avery's state cases (which, Avery claims, confirms "the absence of any lawful Minnesota Supreme Court assignment order" and also breaches "mandatory record-maintenance duties under Minn. Stat. § 485.018"). *Id.* at 5. Second,

Avery alleges that a Minnesota Judicial Branch directory "was retroactively altered in July 2026 to fabricate Schwab's authority," creating "a documented inconsistency in judicial-authority records." *Id.* Avery seemingly connects Judge Bentz to these allegations as well, asserting that she "concealed expired judicial terms" and "altered public records to sanitize misconduct." *Id.* at 6.

Count IX alleges that in the Criminal Case, authorities detained Avery for roughly 58 days without a prompt judicial probable-cause determination by "fabricating bail-hearing paperwork and a detention order." *Id.* at 10. Avery contends that this violated the Fourth Amendment and a "mandatory 48-hour review requirement." *Id.*; *see also* Minn. R. Crim. P. 4.03.

Count X alleges child endangerment through continued contact between Avery's children and Christon, focused on two incidents. *Id.* First, Avery alleges that in December 2020, Christon "was found physically positioned on top of [Avery's] children during a bunk-bed collapse inside the children's bedroom, causing documented physical injury." *Id.* at 7. Second, in December 2023, while the children were visiting their mother, Christon allegedly "threatened to kill" one of the children, "calling her a 'snitch bitch,'" after which Teri Avery allegedly "ran out of the house, leaving the girls barricaded inside with Christon." *Id.* at 7–8. Avery argues that these incidents, together with Christon's "Tier II predatory-offender status," make up "an ongoing grave-risk pattern." *Id.* at 8, 10. Count X seemingly reaches the Judicial Defendants as well, on the theory that they "refused emergency review, denied safety requests, and left [Avery's] children exposed to imminent harm by continuing to allow contact with" Christon. The concrete example here is

apparently the November 2025 denial of Avery's petition for an order for protection. *See id.* at 5, 10.

Count XI alleges retaliation for Avery's exercise of parental rights and for his state-court filings. *Id.* at 10–11. Against Judge Bentz, Avery's retaliation claim focuses on three allegations: (1) that Judge Bentz allegedly "retaliated against [Avery] for asserting federal rights" in connection with his Hague Convention petition; (2) that Judge Bentz muted his testimony at a November 2025 hearing, allegedly fabricated appearance records, and denied an order-for-protection petition Avery filed "based on false statements"; and (3) that at a June 2026 hearing, Judge Bentz allegedly "retaliated against" Avery based on unspecified "disability disclosures." *Id.* at 4–6. Avery separately alleges that Teri Avery "has repeatedly retaliated against [Avery] since 2018" through "a pattern of interference with parental rights" that he claims is actionable. *Id.* at 7. As the Court understands it, Count XI frames Avery's protected activity as his assertion of "lawful parental rights." *Id.* at 10–11.

Finally, Count XII alleges denial of reasonable accommodations in the Dissolution Case in violation of Title II of the Americans with Disabilities Act ("ADA"). *Id.* at 11. The ADA allegations appear confined to a single episode: at the June 2026 hearing in the Dissolution Case, Judge Bentz allegedly "refused ADA accommodations," "muted [Avery] while testifying," and "retaliated against disability disclosures," all of which Avery claims violates the ADA. *Id.* at 6. Count XII adds that this conduct "impair[ed] [Avery's] ability to participate in custody proceedings." *Id.* at 11.

Avery's "Prayer for Relief" has two parts. In the first section titled "Relief the Federal Judge Can Order," he asks for an "expedited" TRO halting all state-court proceedings "involving Plaintiff and [his] minor children." *Id.* at 11. He also asks the Court to give him "[e]mergency temporary" legal and physical custody of his children and to declare "void and unenforceable" any state-court "orders issued without jurisdiction." *Id.* at 11. He further requests that Judge Bentz and McKenney be barred from "any further involvement in [his] matters" and that his state matters be "reassign[ed] . . . to a neutral judge." *Id.* at 12. And he seeks a "no-contact order" preventing any contact between his children and Christon. *Id.* at 12.

In Part B of Avery's requests for relief, he asks the Court to "refer[]" Defendants to various federal and state authorities for criminal review. *See id.* at 12–13. The Amended Complaint's "preliminary statement" also claims that Avery seeks "compensatory relief," so the Court construes the pleading as seeking damages as well. *Id.* at 1.

**ANALYSIS**

Avery did not pay the filing fee to commence this action and instead seeks to proceed IFP. *See* ECF No. 2. As a result, the Court "shall dismiss the case at any time" if the Court determines that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

An action is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A legally frivolous claim is one built on an "indisputably meritless legal theory." *Id.* at 327. A factually frivolous claim, on the other

hand, is one where the claims are "fanciful," "fantastic," or "delusional"—that is, allegations that "rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (citations omitted).

When determining whether a complaint states a claim for which relief may be granted, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). While a complaint's factual allegations need not be detailed, they must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the complaint must "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court's consideration of whether a pleading states a claim is "context-specific," and the Court must "draw on its judicial experience and common sense." *Id.* at 679. Because Avery is acting pro se, the Court must liberally construe his complaint, but the complaint "must still allege sufficient facts to support the claims advanced." *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019).

## I. Avery's Mistaken View of Recusal

The amended complaint is flawed for many reasons, but a threshold point relevant to most of Avery's claims is a fundamental misunderstanding of how recusal works in Minnesota courts. Avery's view is that Judge Bentz was "removed from [his] matters"—evidently meaning *all* of his matters—on December 10, 2024. *See* ECF No. 7 at 9; *see also* ECF No. 11 at 2. As a result, Avery claims, Judge Bentz "could not legally preside" over

the Dissolution Case, and any orders she issued in that matter are "void ab initio." ECF No. 11 at 2.

But the Removal Order plainly says otherwise. The Order grants Avery's timely peremptory notice to remove Judge Bentz in the Criminal Case—and *only* that case. *See* ECF No. 11-1 at 1. Avery seems to believe the Removal Order reflects some sort of admission of judicial bias. *See* ECF No. 7 at 2–3. But a granted notice to remove in a Minnesota criminal case has nothing to do with bias; it merely reflects routine handling of a party's one-time removal as of right under Minnesota law. *See, e.g.*, Minn. R. Crim. P. 26.03, subd. 14(4); Minn. Stat. § 542.16.

Furthermore, on the same day that Judge Bentz entered the Removal Order, court administration issued a "Notice of Judicial Reassignment" transferring Avery's criminal case to Judge Trushenski—a document Avery himself has provided the Court. *See* ECF No. 11-1 at 11. Avery's claim that "no assignment order" followed Judge Bentz's removal is incorrect. His view that the removal reached the Dissolution Case is contradicted by the Removal Order's text and the Dissolution Case's docket.[5] To the extent the amended complaint asserts any void-order theory based on Judge Bentz's actions in the Dissolution Case, that theory lacks an arguable basis in law and in fact and is frivolous. *See Neitzke*, 490 U.S. at 325, 327.

[5] As noted above, Avery's December 2024 attempt to remove Judge Bentz from the Dissolution Case was denied, and his May 2026 motion to disqualify her for cause was denied by written order. *See* Dissolution Case, Index #50, #504.

## II. Absolute Immunity and Sovereign Immunity

Judicial immunity is "an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). A judge loses that immunity only for nonjudicial actions or for judicial actions taken "in the complete absence of all jurisdiction." *Id.* at 11–12. Every act Avery attributes to Judge Bentz, Judge Schwab, and Judge Haley—conducting or documenting a bail hearing, ruling on release and detention, presiding over custody and order-for-protection hearings, appointing a guardian *ad litem*, ruling on removal and disqualification motions, denying emergency and reconsideration motions, addressing accommodation requests, and setting a sanctions hearing—is a judicial act "taken in the very aid of the judge[s'] jurisdiction over . . . matter[s] before [them]." *Id.* at 13.

Allegations that judicial conduct was malicious or in bad faith do not eliminate absolute judicial immunity. *See, e.g.*, *id.* at 11. And assertions that a judge acted despite a removal notice, a disputed recusal, or a defective assignment describe, at best, action in *excess* of jurisdiction—not the "clear absence of all jurisdiction" required to overcome judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (citation omitted). To the extent Avery's claims survive the failure of his void-order theory discussed above, judicial immunity disposes of his claims against Judge Bentz for her post-removal conduct, against Judge Schwab for presiding under an allegedly lapsed designation, and against Judge Haley for her rulings on Avery's objections.[6]

---

[6] *See* ECF No. 7 at 5 (asserting that Judge Haley "acted as an unlawful gatekeeper, denying jurisdictional objections and issuing determinations outside her authority").

McKenney, as a court administrator, is likewise immune from damages liability. It is well established that court clerks and administrators enjoy absolute quasi-judicial immunity for discretionary acts—such as docketing filings, issuing notices of judicial determinations, and assigning cases—that they perform under court order or court rules or at a judge's direction. *See, e.g.*, *Wright v. Ramsey County*, No. 25-cv-2502 (JRT/DLM), 2026 WL 1739036, at *6 (D. Minn. Jan. 6, 2026) (collecting cases), *report and recommendation adopted*, 2026 WL 1736144 (D. Minn. June 16, 2026). The conduct Avery alleges McKenney undertook—issuing a reassignment notice, transmitting notices of Judge Bentz's determinations, and responding or not responding to Avery's demands that his filings be "escalated," *see, e.g.*, ECF No. 11-1 at 8–9—falls squarely within these duties.

To the extent Avery means to sue the Judicial Defendants in their *official* capacities for damages, such claims are subject to dismissal for two reasons. First, an official-capacity suit is a suit against the employing entity—here, the State of Minnesota. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). And neither a state nor a state official sued in his or her official capacity for damages is a "person" subject to suit under 42 U.S.C. § 1983. *See Hafer v. Melo*, 502 U.S. 21, 25–26 (1991). Second, Eleventh Amendment sovereign immunity generally bars claims targeting states or arms of the state. *See, e.g.*, *Harris v. Mo. Ct. of Appeals, W. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) ("[C]ourts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the [E]leventh [A]mendment.").

## III. Equitable Relief Sought Against Judicial Officers

The amended complaint also purports to seek equitable relief from the Judicial Defendants, but the Court will dismiss those claims too. Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Avery does not allege that any declaratory decree was violated or that declaratory relief was unavailable; indeed, declaratory relief is precisely what he seeks. *See* ECF No. 7 at 1, 11. The injunctions he requests against the Judicial Defendants are therefore statutorily barred.

Nor is declaratory relief available in the form Avery seeks. A declaration that past state-court orders are "void and unenforceable" is retrospective, and retrospective declaratory relief against a judicial officer is not available under Section 1983. *See, e.g.*, *Beske v. Vig*, No. 26-cv-2793 (PJS/LIB), 2026 WL 2129937, at *2 (D. Minn. July 24, 2026).

The more structural relief Avery seeks—an order removing Judge Bentz and McKenney from his cases, compelling reassignment to a different judge, and transferring venue, ECF No. 7 at 12—lies beyond this Court's authority. That's because federal courts do not oversee the internal operations of state judicial systems. "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable," and the Constitution does not contemplate "an ongoing federal audit" of state courts. *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). And to the extent Avery's structural requests rest on Minnesota's assignment and removal rules, the Eleventh Amendment

forbids federal courts from telling state officials how to conform their conduct to *state* law. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

### IV. *Younger* Abstention and the Dissolution Case

Even setting aside the problems noted above, the *Younger* abstention doctrine would bar the Court from granting Avery the core relief he seeks: a stay of "all state-court actions involving Plaintiff," nullification of the state courts' orders, and federal supervision of the Dissolution Case. ECF No. 7 at 11–12.

*Younger* abstention applies to three "exceptional" kinds of state proceedings: (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (internal quotation marks omitted) (citation omitted). If a case involves a state proceeding that fits a *Younger* category, the Court applies the so-called *Middlesex* factors: "(1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 479 (8th Cir. 1998) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

The Dissolution Case is a qualifying proceeding. Indeed, the Eighth Circuit has applied *Younger* to ongoing state family-court proceedings. *See Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610–11 (8th Cir. 2018). The *Middlesex* factors are satisfied, too:

the Dissolution Case and the frivolous-litigant proceeding are ongoing; domestic relations and the integrity of state judicial processes are paradigmatic state interests; and Minnesota's courts give Avery an adequate opportunity to press every federal contention he raises here. *See* 457 U.S. at 432.

The last *Younger*-related issue is whether some exception to the doctrine applies here. "A federal court should not abstain [under *Younger*] if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Plouffe v. Ligon*, 606 F.3d 890, 892–93 (8th Cir. 2010) (internal quotation marks omitted) (citation omitted). But the amended complaint's conclusory characterizations, resting on the void-order premise, which the Court rejects, and on Avery's disagreement with adverse rulings, do not credibly establish that any exception applies. Even absent the problems discussed above, the Court would still decline to grant Avery relief based on the principles of *Younger* abstention.

## V. *Heck* and Avery's Criminal-Case Claims

Numerous counts in the Amended Complaint—by the Court's assessment, parts of Counts I, II, III, VIII, and IX—appear to arise from the Criminal Case and seek to attack Avery's conviction or sentence. Under *Heck v. Humphrey*, however, a Section 1983 claim for damages cannot proceed if it would render a conviction or sentence invalid unless the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994).

Avery pleaded guilty, was convicted of a felony, and presumably remains on supervised probation through January 2027. Criminal Case, Index #33 at 1–2. No favorable termination of his conviction or sentence has yet occurred. These claims are therefore not cognizable until Avery secures a favorable termination.[7] *See Heck*, 512 U.S. at 486–87.

## VI. Claims Against Teri Avery and Christon

To the extent Avery's claims target Teri Avery and Christon, they face a basic obstacle: both are private individuals, and Section 1983 reaches only conduct that is "fairly attributable" to a state actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). A private party can be liable under Section 1983 for conspiring with a state judge, but pleading such a claim requires specific facts plausibly showing a meeting of the minds between the private party and the state actor to engage in conduct for the purpose of depriving the plaintiff of his rights. *See, e.g.*, *Edner v. Redwood Cnty. Dist. Att'y's Off.*, No. 19-cv-2486 (SRN/LIB), 2025 WL 2408667, at *5, 9 (D. Minn. Aug. 20, 2025).

The amended complaint offers no such plausible allegations. Avery alleges that Teri Avery took and concealed their children, filed a false police report, invoked stale allegations, and benefited from favorable rulings, and that Christon endangered the

---

[7] One caveat: a Fourth Amendment claim that Avery's pretrial detention occurred without a prompt judicial probable-cause determination would not necessarily invalidate his later conviction. *See, e.g.*, *Moore v. Sims*, 200 F.3d 1170, 1171–72 (8th Cir. 2000). Here, Avery's claim concerns Judge Bentz's alleged issuance of fabricated detention paperwork—a quintessentially judicial act shielded by absolute judicial immunity.

children. ECF No. 7 at 6–8. But Avery pleads no facts suggesting any agreement between either Teri Avery or Christon and any judge or court official. Teri Avery litigating against Avery in state court, even (as alleged) dishonestly, is not state action. The bare assertion of a "systemic conspiracy," *see* ECF No. 7 at 1, is the sort of conclusory allegation that *Iqbal* instructs courts to disregard, 556 U.S. at 678.

Avery points to other statutes to suggest Teri Avery's and Christon's liability, but these theories fail as a matter of law. The federal kidnapping statute (18 U.S.C. § 1201) and Minnesota's criminal deprivation-of-parental-rights statute (Minn. Stat. § 609.26), *see* ECF No. 7 at 6, are criminal statutes. Neither statute creates a civil cause of action, and it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, Avery's wrongful-retention, kidnapping, concealment, and child-endangerment theories in Counts VI and X do not state a plausible federal claim.[8]

## VII. Claims Based on the Hague Convention

All of Avery's claims concerning the Hague Convention (including Count V, which specifically invokes it) are founded on a misunderstanding. The Hague Convention and its federal implementing statute, ICARA, address the wrongful transfer of children across international borders between so-called "Contracting States," and their core remedy is an order returning a child to his or her country of habitual residence. *See, e.g.*, 22 U.S.C.

[8] To the extent these theories might sound in *state* law, the Court addresses them briefly below.

§§ 9001(a)(4), 9003(b); *Abbott v. Abbott*, 560 U.S. 1, 8–9 (2010) (discussing Hague Convention and noting that its adoption was "in response to the problem of *international* child abductions during domestic disputes" (emphasis added)). The amended complaint concerns relocations between Minnesota and Iowa—that is, entirely within the United States. Avery alleges no international removal or retention, so the Convention and ICARA do not apply.[9]

**VIII. Claims Under Title II of the ADA**

Count XII points to Title II of the ADA, under which "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. As this wording suggests, Title II's obligations apply to public entities; the statute does not permit suits against individuals in their individual capacities. *See, e.g.*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc). Avery has sued only individual defendants and named no public entity, so any Title II claim fails.

**IX. Avery's Requests for Referrals and Other Requests**

Part B of the amended complaint's prayer for relief asks the Court to refer Defendants to various law-enforcement entities, including the United States Department of Justice, the FBI, and judicial-misconduct bodies. ECF No. 7 at 12–13. These requests are

---

[9] Avery's references to Minn. Stat. ch. 518D, *see* ECF No. 7 at 3, reflect the same confusion. Chapter 518D is Minnesota's enactment of the UCCJEA, a state statute governing interstate custody jurisdiction. *See* Minn. Stat. §§ 518D.101 *et seq.* It creates no federal cause of action, and as noted above, a federal court may not grant relief against state officials on the grounds that they violated state law. *See, e.g.*, *Pennhurst*, 465 U.S. at 106.

nonstarters. Federal courts do not start or direct criminal investigations at a litigant's request, and as already noted, a private party has no judicially cognizable interest in someone else's prosecution or investigation. *See, e.g.*, *Linda R.S.*, 410 U.S. at 619. None of these requests, then, states a claim for which relief can be granted.

Avery's request for a freestanding "evidence preservation order," ECF No. 7 at 12, is ancillary to claims that cannot proceed. The request therefore falls with those claims.

To the extent any claims against John and Jane Does 1–20 (and against "all related state actors") survive the discussion above, the Court dismisses them for the independent reason that the amended complaint attributes no specific conduct to these unnamed individuals. Liability under Section 1983 is personal, so a complaint must plead what each defendant did. *See, e.g.*, *Iqbal*, 556 U.S. at 676. Here there are no allegations about conduct by any of these unidentified people.

Finally, on the Court's read, it is doubtful that any of Avery's constitutional theories in Counts I, VII, and XI survive because of judicial immunity, Section 1983 limits on relief from judicial officers, and *Younger* abstention. But even if some portion of those claims could survive those barriers, the amended complaint still fails to plead a plausible claim against any nonimmune actor. For these reasons, Avery's claims under federal law in the amended complaint are dismissed.

**X. Supplemental Jurisdiction**

If any state-law claims remain, they raise the issue of whether the Court should exercise jurisdiction over them. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." But a court may decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

As best the Court understands the claims raised in Avery's amended complaint, the Court has dismissed all of Avery's claims arising under federal law. To the extent that Avery has raised any state-law claims which survive the analysis above, the Court will not exercise supplemental jurisdiction over them and dismisses them for that reason.

## XI. Summary

For these reasons, the Court dismisses this action in its entirety.[10] As a result, the Court denies Avery's IFP application and TRO motions as moot.

## CONCLUSION

Based on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

---

[10] The Court also directs Avery to Federal Rule of Civil Procedure 11(b), which requires a party to certify that he knows or believes that the pleadings are proper, that legal claims are nonfrivolous, and that evidence supports the factual contentions. The Court does not impose sanctions at this time but reminds Avery that he must follow Rule 11(b) if he brings any future cases.

1. This action is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B);

2. Reuben Lopez Avery's Application To Proceed *in Forma Pauperis* (ECF No. 2) is **DENIED** as moot; and

3. Reuben Lopez Avery's original and amended Emergency Motions for Temporary Restraining Order and Declaratory Relief (ECF Nos. 3, 11) are **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 4, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge